UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| LORI B. APPLER<br><br>Plaintiffs,<br><br>v.<br><br>MEAD JOHNSON & COMPANY, LLC d/b/a MEAD JOHNSON and d/b/a MEAD JOHNSON NUTRITIONALS,<br><br>Defendant. | ) | 3:14-cv-166-RLY-WGH |

**ENTRY ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

Plaintiff, Lori B. Appler ("Appler"), has sued Defendant, Mead Johnson Company, LLC ("Mead Johnson"). Appler accuses Mead Johnson of unlawful employment actions causing Appler to suffer numerous injuries. In response to three of Mead Johnson's interrogatory requests, Appler has filed a Motion for Protective Order to limit the scope of discovery regarding Appler's social media accounts and activities. (Filing No. 23). The matter is fully briefed. (Filing No. 24; Filing No. 27; Filing No. 29). For the reasons set forth below, Plaintiff Appler's motion is **GRANTED in part and DENIED in part**.

## I. Background

On December 5, 2014, Plaintiff filed her Complaint against Defendant, alleging causes of action for violation of the ADA/ADAAA; for violation of the ERISA; for retaliation; and the intentional infliction of emotional distress.

Plaintiff agreed to dismiss and no longer pursue her ERISA claim.

As to the remaining claims, Plaintiff contends she was fired because of her narcolepsy or other sleep disorder and that Defendant refused to engage in an interactive process to determine appropriate accommodations as required by the ADA/ADAAA. In terms of damages for her emotional distress claim, Plaintiff only claims garden-variety emotional distress as opposed to severe and ongoing emotional distress.

Defendant is seeking, through interrogatories, to obtain Plaintiff's social media activity. Plaintiff objects to these requests as being overly broad and burdensome. The interrogatories at issue are as follows:

> **Interrogatory No. 44:** Provide all messages, photographs or videos posted by Plaintiff, or by anyone on her behalf regarding Defendant or any employees or former employees of Defendant on any social networking site including, but not limited to, Facebook, MySpace, LinkedIn, Vine, etc.
>
> * * *
>
> **Interrogatory No. 45:** Provide copies of any and all online profiles, postings, messages (including, without limitation, tweets, replies, retweets, direct messages, status updates, wall comments, groups joined, activity streams and blog entries) photographs, videos, and online communications that:
>
> (a) refer or relate to the allegations set forth in the Complaint;
> (b) refer or relate to any facts or defenses raised in the Answer;
> (c) reveal, refer or relate to any emotion, feeling or mental state in the last five (5) years; or
> (d) reveal, refer or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state.
>
> * * *
>
> **Interrogatory No. 46:** Produce a download of Plaintiff's

> complete Facebook Profile. To do so, go to the Account Settings page (arrow button located next to the "Home" button) and click the "Download Your Information" button (located at the bottom of the general settings page). Once the page loads, click the "Start My Archive" button. Once Facebook verifies Plaintiff's identity, an email will be sent to Plaintiff advising that a zip file is ready for download. Once the zip file is received, please produce it to Defendant. Plaintiff is hereby put on notice that deleting anything from her account from this point forward (including but not limited to posts, status updates, mail messages, photographs, friends, links, etc.) is considered spoliation of evidence and Plaintiff's counsel has an ethical obligation to ensure that all evidence is preserved. Additionally, noting the fact that portions of Plaintiff's profile might be publically available is an insufficient response to this Request.

(Filing No. 24 at EFC p. 3-4). The Defendant also mentioned Interrogatory No. 10 in its response brief. (Filing No. 27 at EFC p. 2). But Plaintiff does not mention this in her brief, and it seems that while Plaintiff has objected in her response, she has also provided an adequate answer. Therefore, Interrogatory No. 10 will not be discussed further.

## II. Legal Standards

Federal Rule of Civil Procedure 26 dictates that parties engage in broad, liberal discovery encompassing

> any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

Social media content presents a unique challenge for courts due to its relative novelty and their ability to be shared by someone besides the original poster, and the multifarious privacy settings that may be constructed to allow specifically limited viewing. Nonetheless, a court may compel production of a party's Facebook information if the party seeking disclosure makes a threshold relevance showing. *See Equal Emp't Opportunity Comm'n v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434-35 (S.D. Ind. 2010) ("*EEOC*"); *Potts v. Dollar Tree Stores, Inc.*, 2013 WL 1176504 (M.D. Tenn. Mar. 20, 2013); *Tompkins v. Detroit Metro. Airport*, 287 F.R.D. 387, 388 (E.D. Mich. 2012).

The challenge arises in applying traditional discovery rules and standards to the new amorphous context that is social media. While the relevancy bar for discoverable content is liberal, it is not limitless; the basic limits of discovery still apply. *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 571 (C.D. Cal. 2012) (discovery requests should "put a 'reasonable person of ordinary intelligence' on notice of which specific documents or information would be responsive to the request, [in order] to satisfy Rule 34(b)(1)(A)'s requirement that production requests be stated with reasonable particularity"); *Simply Storage*, 270 F.R.D. at 434 ("Discovery of SNS [social networking sites] requires the application of basic discovery principles in a novel context"); *Davenport v. State Farm Mut. Auto. Ins. Co.*, No. 3:11-CV-632-J-JBT, 2012 WL 555759, at *1 (M.D. Fla. Feb. 21, 2012) (A request for discovery [of SNS

content] must still be tailored . . . so that it 'appears reasonably calculated to lead to the discovery of admissible evidence") (quoting Fed. R. Civ. P. 26(b)(1)).

## III. Discussion

The court must evaluate each of the Interrogatories at issue to fully rule on Plaintiff's Motion for Protective Order. Each concerns the same competing issues of discovery and privacy, but the relevancy, burden, and over breadth analysis differs for each—as does the court's finding.

### A. Interrogatory No. 44

Because this request is limited to SNS content that involved Defendant and Defendant's employees, the request in Interrogatory No. 44 is narrowly tailored enough to pass muster. It is limited to clearly target content that is relevant and that will lead to admissible evidence. This request is very similar to requests that other courts have held were proper and permissible. *See e.g. Mailhoit*, 285 F.R.D. at 572 ("Category 3, which requests all SNS communications 'between Plaintiff and any current or former Home Depot employees, or which in any way refer . . . to her employment at Home Depot or this lawsuit,' adequately places Plaintiff on notice of the materials to be produced and is reasonably calculated to lead to the discovery of admissible evidence").

Although the request is not explicitly limited by time, it is inherently limited by the time Plaintiff had contact with Defendant and its employees and by the time she was employed by them. Plaintiff has also not alleged that production will be unduly burdensome, and it does not on its face appear so. Therefore I will not consider this as a potential reason to reject the request.

Plaintiff's request for a Protective Order as it relates to Interrogatory No. 44 is DENIED.

**B. Interrogatory No. 45**

As worded, this Interrogatory seems to ask "the Plaintiff (or her counsel) to scour the world wide web and find [nearly any and all SNS content that concerns] . . . this case no matter who posted, tweeted or blogged about this case." (Filing No. 24 at EFC p. 3-4). The scope of the request is extremely vague and broad.

Subpart (a) asks the Plaintiff to produce SNS content that "refer[s] or relate[s] to any facts or defenses raised in the Complaint," and subpart (b) asks for the same with regard to the Answer. To respond to this, Plaintiff would have to produce *all* SNS content that may somehow be relevant to its own case, but also to sift through Defendant's Answer and produce *all* SNS content that was implicated by Defendant's responses and general denials. This is not an appropriate burden to shift to the Plaintiff through discovery. It does not provide fair notice of what is required and asks for far beyond what is reasonable.

Further, other courts have seen and rejected requests similar to those made in subparts (c) and (d). I agree with these courts and echo their sentiments. As the court in *Mailhoit* said, this type of request could lead to the production of ridiculously irrelevant SNS content:

> [While requests for SNS content] relating to "any emotion," could be understood to encompass only communications containing specific

> emotive words (which the request does not identify), the category would still arguably require the production of many materials of doubtful relevance, such as a posting with the statement "I hate it when my cable goes out." The second part of the category, which seeks communications relating to "events" that could "reasonably be expected to produce a significant emotion," is similarly vague and overbroad. Arguably, watching a football game or a movie on television is an "event" that may produce some sort of "significant emotion," but it is unclear whether Plaintiff would be required to produce messages relating to such activities.

285 F.R.D. at 571-72.

Interrogatory No. 45 is not a reasonable discovery task for Plaintiff to undertake. *See e.g. Mailhoit*, 285 F.R.D. at 571-72 ("Without more specific guidance, Category 1 is not "reasonably particular." . . . Defendant fails to make the "threshold showing" that the request at issue is reasonably calculated to lead to the discovery of admissible evidence"). This request is too vague to fairly put Plaintiff on notice of what needs to be produced and is "cast[ing] too wide a net for any information that may be relevant and discoverable." *Mackelprang*, No. 2:06-CV-00788-JCM, at *7. Further, I am not persuaded that the request rationally seeks relevant evidence, especially in relation to the enormous burden of production that the request would put on Plaintiff.[1] As a result, this request falls far from the standards required by Rule 26.

---

[1] While the most recent amendments to Federal Rule of Civil Procedure will not take effect until December, 2015, I find the new language of Rule 26(b)(1) to be instructive, if not yet binding legal authority. That language will say, in part, that "Parties may obtain discovery . . . proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit."

It is possible to imagine a more narrowly tailored version of this request—perhaps one that addressed only content authored by the Plaintiff and was limited to a reasonable amount of time—that would be permissible. Interrogatory 45 as written, however, is far from such a request. Resultantly, Plaintiff's request for a Protective Order as it relates to Interrogatory No. 45 as currently drafted is GRANTED.

**C. Interrogatory No. 46**

Interrogatory No. 46 asks for "a download of Plaintiff's complete Facebook Profile." (Filing No. 24 at EFC p. 3-4). The request goes on to provide instructions for making such a production. The process is undeniably simple, and far from burdensome. The process takes a few minutes, and one simply waits for a download to complete, at which time one receives an email. There is essentially no cost involved in making the production, especially assuming that an electronic version could be produced rather than a hard copy printed. The download comes already separated into categories and files of a user's Profile information.

There is no way to limit what is downloaded by content type or time. Any limitation in that regard would need to be done manually after the download is complete, by deleting categories or by screening each category of data and deleting sections. While limiting the content produced may preserve some of Plaintiff's privacy, it will cost her in the time and money spent editing for the sake of those preservations. Redaction of information is where a burden of

production would arise. *See e.g.* *Stallings v. City of Johnston City*, No. 13-CV-422-DRH-SCW, 2014 WL 2061669, at *3 (S.D. Ill. May 19, 2014) ("Stallings states it took an attorney and a paralegal one week to print, redact, and compile the 500 pages of Stallings' Facebook activity.").

Discovery of an entire Facebook Profile pits two competing ideas of privacy and discovery rights against each other. On the one hand, "SNS content is neither privileged nor protected by any right of privacy," which would suggest it should be discoverable. *Davenport*, 2012 WL 555759 at *1. Yet, on the other hand, a "Defendant does not have a generalized right to rummage at will through information that Plaintiff has limited from public view." *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012). Since the entire download and production of Plaintiff's Facebook profile would include a lot of information not available to the public (and would even include information not readily accessible to the Plaintiff without her independent production of this download), consideration of her privacy interests becomes relevant.

This is not to say that content set to certain high privacy standards is foreclosed from discovery. To the contrary, courts have decided that even "material posted on a "private" Facebook page . . . is generally not privileged, nor is it protected by common law or civil law notions of privacy." *Tompkins, 278 F.R.D. at 388*. Even personal diaries "are discoverable if they contain relevant information regarding contemporaneous mental states and

impressions of parties." *Zakrzewska v. New School*, 2008 WL 126594, at *2 (S.D.N.Y.2008) (granting discovery of plaintiff's diary because "it would be unfair . . . to permit a plaintiff claiming emotional distress to block discovery of facts that may shed important light on whether any emotional distress actually was suffered"); *Rexford v. Olczak*, 176 F.R.D. 90, 93 (W.D.N.Y.1997) (finding Defendant entitled to obtain Plaintiff's diary where her "contemporaneous account of meetings, conversations and other events central to the issues of this case provide relevant evidence that may be useful").

Rather uniquely, this case also has facts that would make a substantial production of Plaintiff's SNS content more relevant than normal. There have been cases in the past that dealt with production of SNS content in order to provide evidence of mental and emotional health, which is at issue here. *See e.g. Simply Storage*, 270 F.R.D. at 436 ("For example, pictures of the claimant taken during the relevant time period and posted on a claimant's profile will generally be discoverable because the context of the picture and the claimant's appearance may reveal the claimant's emotional or mental status."). Courts, including this one, have allowed the production of SNS content to evince a Plaintiff's mental stages and changes in it when that is at issue. *See e.g. Higgins v. Koch Dev. Corp.*, No. 3:11-CV-81-RLY-WGH, 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013) (finding it reasonable that Plaintiff's "Facebook content may reveal relevant information as to the extent their injuries have impacted their 'enjoyment of life, ability to engage in outdoor activities, and

employment,'" and since Plaintiff's "losses in these areas directly impacts [sic] the appropriate damages award, the court finds this information relevant" to discovery); *Ogden v. All-State Career Sch.*, 299 F.R.D. 446, 449 (W.D. Pa. 2014) (citing to *Mackelprang v. Fid. Nat. Title Agency of Nevada, Inc.*, No. 2:06-CV-00788-JCM, 2007 WL 119149, at *8 (D. Nev. Jan. 9, 2007)) ("The court . . . also ruled that the defendant was entitled to discover information relevant to the Plaintiff's alleged emotional distress and her mental condition, which she had placed at issue in the case. The court observed that the proper method for obtaining such information was to serve limited requests for production . . ."). Since plaintiff's mental and emotional state are a factual issue in this case, production of at least some SNS content would be reasonable, as it would reveal evidence relevant to factual disputes in the case.

But here, the Plaintiff's narcolepsy and inability to be at work by a certain early morning time are also at issue. A full production of Plaintiff's Facebook Profile would reveal the times she is active online, so obviously awake. Though it may not be dispositive evidence of Plaintiff's ability to be at work by the earlier times (as she claims she was unable to do because of her narcolepsy, *see* Filing No. 1 at EFC p. 4-5), this information could be used as evidence to the point. *See contra* *Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346, 1348 (M.D. Fla. 2014) (finding that whether or not an opt-in Plaintiff made a Facebook post during work hours or about work had no bearing on total hours worked or whether their job position qualifies for an exemption

under the FLSA, so denying the request for SNS content). In this case, a much broader production of Plaintiff's SNS content can be said to be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Despite Plaintiff's privacy interest, I find that a production of Plaintiff's Facebook activity is generally reasonable in this case. *See Davenport*, 2012 WL 555759 at *2 (finding "the potential relevancy of such photographs outweighs any burden of production or privacy interest therein").

However, there are certain categories of the full Facebook Profile that I find are not sufficiently relevant to overcome Plaintiff's privacy interests. Their production is therefore not merited. A full list of the categories produced by this download can be found on Facebook's Help Center Website. Of these categories, I find Plaintiff does not need to include the following in the download produced: Credit Cards, Facial Recognition Data, IP Addresses, Phone Numbers, Family, and Religious Views. The last two of these categories may, in some cases, be publically viewable, but I find there is a protected privacy interest in this type of information and it has no relevancy here. Therefore, it does not need to be produced.

This is by no means a comprehensive list of the categories with high privacy concerns, or that should be excluded in every case. This analysis is highly specific to the evidence that will be relevant to the facts at issue in this case. The issue at hand of producing SNS content does not seem to be one ready for a bright-line rule, and it may never be. In any case, this is certainly

not the proper case to establish such a rule. A weighing of the relevancy and necessity of information requested, the burden of production, the privacy interests at stake, and other concerns mentioned in Federal Rule of Civil Procedure 26(b)(1) does seem, at a minimum, necessary to make a proper ruling on this type of discovery issue.

After considering these concerns, I find that, with the exception of the categories named above, Plaintiff's request for a Protective Order as it relates to Interrogatory No. 46 is DENIED.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Protective order is **GRANTED in part and DENIED in part**. Appler will have thirty (30) days from this entry to respond to Mead Johnson's permitted Request.

**IT IS SO ORDERED** the 24th day of September, 2015.

Wm G. Hussmann Jr.

WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Served electronically on all ECF-registered counsel of record.**