UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| LORI B. APPLER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:14-cv-166-RLY-WGH |
| ) | |
| MEAD JOHNSON & COMPANY, LLC ) | |
| d/b/a MEAD JOHNSON and d/b/a ) | |
| MEAD JOHNSON NUTRITIONALS, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Plaintiff, Lori B. Appler ("Appler"), has sued Defendant, Mead Johnson Company, LLC ("Mead Johnson"). Appler accuses Mead Johnson of unlawful employment actions causing Appler to suffer numerous injuries. In response to three of Mead Johnson's interrogatory requests, Appler had filed a Motion for Protective Order to limit the scope of discovery regarding Appler's social media accounts and activities. (Filing No. 23).

Appler then retorted with her Second Discovery Requests, with requests mirroring the Defendant's three interrogatories she had objected to, but with her request directed at Mary Engelland[1] ("Engelland"), Appler's immediate

---

[1] While both Plaintiff and Defendant spell Mary's last name as "Engellend" throughout their briefs, it appears that "Engelland" is the correct spelling. This is how Mary's last name appears both typed and signed in her Declaration. (Filing No. 31-3). It is also how Defendant spells Mary's last name in its brief where it has copied excerpts of the Plaintiff's Interrogatories. (Filing No. 31 at EFC pp. 3-5).

supervisor, and Christopher Bernfeld ("Bernfeld"), a human resources representative of the company. Appler contends that these two individuals were key decision makers in the decision to terminate her employment. Mead Johnson filed a Motion for Protective Order (Filing No. 30), claiming that these requests are not seeking relevant information and that Engelland and Bernfeld's privacy rights outweigh any discovery entitlements to the information. (Filing No. 31). The matter is fully briefed. (Filing No. 31; Filing No. 35). For the reasons set forth below, I, Magistrate Judge William G. Hussmann, **ORDER** a hearing on the issues discussed**.**

I.  **Background**

On December 5, 2014, Plaintiff filed her Complaint against Defendant, alleging causes of action for violation of the ADA/ADAAA; for violation of the ERISA; for retaliation; and the intentional infliction of emotional distress. Plaintiff agreed to dismiss and no longer pursue her ERISA claim.

As to the remaining claims, Plaintiff contends she was fired because of her narcolepsy or other sleep disorder and that Defendant refused to engage in an interactive process to determine appropriate accommodations as required by the ADA/ADAAA.

Defendant sought, through three interrogatories, to obtain Plaintiff's social media activity. Plaintiff objected to these interrogatories and filed a Motion for Protective Order. (Filing No. 23). This court granted in part and denied in part Plaintiff's Motion for Protective Order. (Filing No. 36). Before that

ruling was docketed, however, Plaintiff sent her own Second Discovery Requests seeking social media activity of her supervisor, Engelland, and the human resources representative, Bernfeld. Defendant then filed their own Motion for Protective Order, objecting to the following requests:

> **Request No. 1:** Provide all messages, photographs or videos posted on any social networking site including, but not limited to, Facebook, MySpace, LinkedIn, Vine, etc., by Mary Engelland, or anyone on her behalf regarding Plaintiff or any other employee or former employees of Defendant that held the same or similar job title and/or performed the same or similar job duties as Plaintiff held/performed.

* * *

> **Request No. 2:** Provide copies of any and all online profiles, postings, messages (including, without limitation, tweets, replies, retweets, direct messages, status updates, wall comments, groups joined, activity streams and blog entries) photographs, videos, and online communications from Mary Engelland's social media sites that:
> (a) Refer or relate to the allegations set forth in the Complaint;
> (b) Refer or relate to any facts or defenses raised in the Answer;
> (c) Reveal, refer or relate to any mental state pertaining to Plaintiff or people with disabilities generally; or
> (d) Reveal, refer or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state relating to Plaintiff or people with disabilities generally.

* * *

> **Request No. 3:** Produce a download of Mary Engelland's complete Facebook Profile. To do so, go to the Account Settings page (arrow button located next to the "Home" button) and click the "Download Your Information" button (located at the bottom of the general settings page). Once the page loads, click the "Start My Archive" button. Once Facebook verifies Plaintiff's identity, an email will be sent to Mary Engelland advising that a zip file is ready for

3

download. Once the zip file is received, please produce it to Plaintiff's counsel. Defendant is hereby put on notice that deleting anything from Mary Engelland's account from this point forward (including but not limited to posts, status updates, mail messages, photographs, friends, links, etc.) is considered spoliation of evidence and Defendant's counsel has an ethical obligation to ensure that all evidence is preserved. Additionally, noting the fact that portions of Mary Engelland's profile might be publically available is an insufficient response to this Request.

* * *

**Request No. 4:** Provide all messages, photographs or videos posted on any social networking site including, but not limited to, Facebook, MySpace, LinkedIn, Vine, etc., by Christopher Bernfeld or anyone on his behalf regarding Plaintiff or any other employee or former employees of Defendant that held the same or similar job title and/or performed the same or similar job duties as Plaintiff held/performed.

* * *

**Request No. 5:** Provide copies of any and all online profiles, postings, messages (including, without limitation, tweets, replies, retweets, direct messages, status updates, wall comments, groups joined, activity streams and blog entries) photographs, videos, and online communications from Christopher Bernfeld's social media sites that:
(a) Refer or relate to the allegations set forth in the Complaint;
(b) Refer or relate to any facts or defenses raised in the Answer;
(c) Reveal, refer or relate to any mental state pertaining to Plaintiff or people with disabilities generally; or
(d) Reveal, refer or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state relating to Plaintiff or people with disabilities generally.

* * *

**Request No. 6:** Produce a download of Christopher Bernfeld's complete Facebook Profile. To do so, [see Request No. 3, above].

The same legal standards apply to the analysis of Defendant's Motion for Protective Order that also applied in Plaintiff's previous Motion for Protective Order. The court will reiterated that standard as it is written in its Order granting in part and denying in part Plaintiff's Motion for Protective Order, (Filing No. 36), and then proceed to apply it to this new situation.

## II.  Legal Standards

Federal Rule of Civil Procedure 26 dictates that parties engage in broad, liberal discovery encompassing

> any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

Social media content presents a unique challenge for courts due to its relative novelty and their ability to be shared by someone besides the original poster, and the multifarious privacy settings that may be constructed to allow specifically limited viewing. Nonetheless, a court may compel production of a party's Facebook information if the party seeking disclosure makes a threshold relevance showing. *See Equal Emp't Opportunity Comm'n v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434-35 (S.D. Ind. 2010) ("*EEOC*"); *Potts v. Dollar*

*Tree Stores, Inc.,* 2013 WL 1176504 (M.D. Tenn. Mar. 20, 2013); *Tompkins v. Detroit Metro. Airport,* 287 F.R.D. 387, 388 (E.D. Mich. 2012).

      The challenge arises in applying traditional discovery rules and standards to the new amorphous context that is social media. While the relevancy bar for discoverable content is liberal, it is not limitless; the basic limits of discovery still apply. *Mailhoit v. Home Depot U.S.A., Inc.,* 285 F.R.D. 566, 571 (C.D. Cal. 2012) (discovery requests should "put a 'reasonable person of ordinary intelligence' on notice of which specific documents or information would be responsive to the request, [in order] to satisfy Rule 34(b)(1)(A)'s requirement that production requests be stated with reasonable particularity"); *Simply Storage,* 270 F.R.D. at 434 ("Discovery of SNS [social networking sites] requires the application of basic discovery principles in a novel context"); *Davenport v. State Farm Mut. Auto. Ins. Co.,* No. 3:11-CV-632-J-JBT, 2012 WL 555759, at *1 (M.D. Fla. Feb. 21, 2012) (A request for discovery [of SNS content] must still be tailored . . . so that it 'appears reasonably calculated to lead to the discovery of admissible evidence") (quoting Fed. R. Civ. P. 26(b)(1)).

### III.   Discussion

      Preliminarily, I find it important to mention a minor disagreement in interpretation of Plaintiff's requests that is easily resolved. It deals with Defendant's interpretation of Plaintiff's Requests 2(c) and 5(c), which seek SNS content that "relate[s] to any mental state pertaining to Plaintiff or people with disabilities generally." (Filing No. 35 at EFC p. 4). I find that Defendant has

misconstrued these requests. (Filing No. 31 at EFC p. 6). ("Defendant cannot provide information related to the mental state of Plaintiff or 'people with disabilities generally.' Such information is known only to that individual and only comes to surface when the individual chooses to share such information.") It seems very clear from the context, as Plaintiff says in her reply brief, that "those requests relate only to posts relaying the authors' own mental state <u>concerning</u> Plaintiff, or others with disabilities, and do not require or invite the authors to perform acts of mentalism." (Filing No. 35 at EFC p. 4). Defendant's attempt to read these request as asking the witnesses to produce the inner mental workings of Plaintiff and others is not what was intended by the requesting party. I find these requests are seeking posts by Engelland and Bernfeld that relate to their own thoughts and opinions regarding Plaintiff and to people with disabilities generally.

As to the merits of Plaintiff's Second Discovery Requests, I find that the balance of relevancy and burden concerning Plaintiff's requests and Defendant's requests is very different. Plaintiff's SNS content was particularly relevant because it was very likely to lead to admissible evidence regarding her disability and emotional distress claim. But the argument for producing Engelland and Bernfeld's SNS content is more attenuated.

Plaintiff claims that Engelland and Bernfeld's SNS content is similarly relevant because their mental state is relevant circumstantial evidence that could tend to evince their motivations for firing Plaintiff. Any comments made

by them on social media regarding "Plaintiff directly, or expressing an animosity, hostility, or prejudice against, or amusement with or belittlement of, persons with disabilities in general" could, Plaintiff argues, "go a long way toward establishing, inferentially, that the adverse action against Plaintiff was motivated 'because of' her disability." (Filing No. 35 at EFC p. 5).

Defendant argues that Engelland and Bernfeld's sworn testimony alleging there are no such social media comments should be enough to obviate this request. (Filing No. 31 at EFC p. 8). But an essential part of discovery is allowing the parties to access information that tests the truthfulness and validity of their opponents' claims. *Loft, Inc. v. Corn Products Ref. Co.*, 103 F.2d 1, 7-8 (7th Cir. 1939) ("The rationale of this attitude [towards liberal discovery] is, of course, not only that the court wants to know the truth, but also that it is good for both the parties to learn the truth far enough ahead of the trial.").

As a result, and even as Defendant seems to acknowledge in their brief, at least some of Engelland and Bernfeld's SNS content—namely, "any discussions regarding Plaintiff or persons with disabilities"—would be relevant and therefore discoverable. (Filing No. 31 at EFC p. 8). Defendant contends, however, that Engelland and Bernfeld have not posted or tied themselves to anything on social media that would fall within this category. (*Id.*) ("It is worth mentioning that a narrowly crafted discovery request for this information would have yielded the foregoing response [that no relevant SNS content exists] and obviated the need for Defendant to seek a Protective Order.").

8

I find that Defendant overstates this point; Engelland and Bernfeld's deposition testimony is not enough, in this case, to dispose of the conceivable need for at least some review of the SNS content Plaintiff has requested. Here, Plaintiff is looking for SNS content that would suggest the decision makers' opinions on employees, people with disabilities, people who are late to work, and people with sleep disorders. These are fairly broad and vague categories. Reasonable people could differ on whether a particular comment was disparaging. Engelland and Bernfeld could have truthfully responded that they did not post, write, like, or share the type of content they were asked about, but Plaintiff's view of their SNS content might produce a different opinion and, therefore, different results.

In most employment cases, plaintiffs must establish motivation and opinion based on indirect and circumstantial remarks. In this particular case, Engelland and Bernfeld's depositions do make it seem highly unlikely that either Engelland or Bernfeld have SNS content with outrageous statements (e.g. "The useless narc was late to work again today").  However, a collection of more innocuous content might still be relevant to the Plaintiff's case (e.g. sharing an article questioning the existence of sleep disorders, posting disparaging comments about people who sleep later into the day, or complaining about Plaintiff in private messages).

For this reason, I see a viable reason for Plaintiff's counsel to review Engelland and Bernfeld's SNS content for such remarks. And as there is

already a Protective Order restricting the disbursement of discoverable information, I find that this could be accomplished without undue invasion of Engelland and Bernfeld's privacy rights. ([Filing No. 35](#)) ("Any party or non-party who produces protected information in this action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Order" at [Id. at EFC p. 2](#)).

The parties did not discuss the feasibility, burden, or cost of conducting a search of SNS content for a more limited interrogatory than what the Plaintiff requests at this time. As such, the court **ORDERS** a hearing to be scheduled on the matters of (a) procedures for searching and limiting SNS content to the relevant categories, (b) the mechanism available for such a search, (c) the cost involved in such a search, (d) the proper individual(s) to conduct the search and limiting of SNS content, and (e) who should bear the cost of such a search and limiting operation.

**IV.  Conclusion**

For the foregoing reasons, the court **GRANTS the Motion in part, DENIES the Motion in part**, and **ORDERS** a hearing on issues (a) through (e) as discussed in the paragraph above. The **HEARING** will be conducted telephonically on **WEDNESDAY, OCTOBER 21, 2015**, at 9:00 a.m., Evansville time (CDT), before Magistrate Judge Hussmann. **The information needed by**

**counsel to participate in this telephonic conference will be provided by a separate notification.**

      **IT IS SO ORDERED** the 1st day of October, 2015.

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Served electronically on all ECF-registered counsel of record.**